**MEMORIAL HOSPITAL OF GALVESTON COUNTY, et al., Appellants,**

v.

**Zelma Lee GILLIS, Appellee.**

**No. 01–86–00830–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 14, 1987.

Scott Lyford, Galveston County Legal Dept., Galveston, for appellants.

Scott A. Sanes, Hardy, Milutin, Johns & Sherrod, Houston, for appellee.

Before EVANS, C.J., and SAM BASS and LEVY, JJ.

### OPINION

SAM BASS, Justice.

This is an appeal in a worker's compensation case. A jury found that the appellee suffered total and permanent disability, and awarded $52,290.59 in damages.

We affirm.

Gillis brought suit against Memorial Hospital of Galveston and Galveston County for an occupational disease she contracted while working at the hospital. Her duties exposed her to chemical cleaning agents used in the morgue, autopsy rooms, and emergency rooms.

On June 27, 1979, the appellee was cleaning a room and sprayed some chemical cleaner on a desk. She started gasping for air and coughing, and she immediately reported this to her supervisor, who sent her home. The next day the appellee spit up blood, and went to John Sealy Hospital for treatment. A doctor advised her to take one month off from work, telling her that she had a chemical bronchitis problem. After appellee went back to work, she again became ill and was off for another month. She then went to see Dr. Drake, who hospitalized her for tests on September 28, 1979. After the tests were completed, the appellee gave the hospital a note signed by Dr. Drake requesting that she be given an extended leave-of-absence.

In August 1980, appellee filed a claim with the Industrial Accident Board, and subsequently, appealed from the Board's denial of her claim on July 15, 1981. On February 21, 1985, the trial court entered an order of dismissal for want of prosecution, but the clerk did not mail the notice of dismissal until March 28, 1985. When appellee received the notice of dismissal, she promptly filed a motion to reinstate on April 3, 1985. A hearing was held on the motion, with all parties present, and the court reinstated the cause on the docket on May 29, 1985.

At trial, Dr. Drake testified that "appellee was not passing air in and out of her lungs normally due to the spasms of the bronchioles." He stated that continued exposure to the chemical agents caused appellee to have chemically induced bronchitis; that the decrease in air flow would affect her ability to work and would totally disable her from performing her day-to-day work activities; and that she had a 100% total and permanent disability. The appellee has not worked since July 28, 1979.

In points of error one, two, and three, the appellants contend that the trial court erred in entering its order of reinstatement, claiming that the court lacked jurisdiction; the motion to reinstate was not verified and was not filed within 30 days of the signing of the dismissal order.

Under Tex.R.Civ.P. 165a(2), a motion to reinstate must set forth the grounds for reinstatement, be verified by the movant or her attorney, and be filed with the clerk within 30 days after the order of dismissal is signed or within the period provided by rule by Tex.R.Civ.P. 306a. The court must reinstate the case if it finds, after a hearing, that the failure of the party or her attorney was not intentional or the result of conscious indifference, but was due to an accident or mistake, or that the failure has been otherwise reasonably explained. Tex.R.Civ.P. 165a(2).

Tex.R.Civ.P. 306a(4) provides:

If within twenty days after the judgment or other appealable order is signed, a party adversely affected by it or his attorney has neither received the notice required by paragraph (3) of this rule nor acquired actual knowledge of the order, then with respect to that party, all the periods mentioned in paragraph (1) shall begin on the date that such party or his attorney received such notice or acquired

actual knowledge of the signing, whichever occurred first, but in no event shall such periods begin more than ninety days after the original judgment or other appealable order was signed.

Tex.R.Civ.P. 306a(3) states that the clerk of the court shall immediately give notice to the parties or their attorneys of record by first-class mail, advising that the judgment or order was signed.

■ The evidence shows that the judgment to dismiss was signed February 21, 1985, but that the notice of dismissal was not mailed until March 28, 1985. Thus, we hold that the appellee's motion to reinstate, which was filed on April 3, 1985, was filed timely under Tex.R.Civ.P. 165a(2) and 306a(4). *State Bar of Texas v. Roberts*, 723 S.W.2d 233 (Tex.App.—Houston [1st Dist.] 1987, no writ).

The action of a trial court in granting or refusing an application for reinstatement is an exercise of its discretion, and its ruling will not be disturbed on appeal absent a clear showing of an abuse of such discretion. *Lloyds of London v. Walker*, 716 S.W.2d 99 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ We also hold that the trial court did not abuse its discretion in granting the appellee's motion to reinstate. The motion alleged that the appellee had difficulty scheduling the deposition of the treating physician and that there was a companion case that required trial before the instant case. The appellants did not bring forward a statement of the evidence at the hearing on the motion to reinstate, and under such circumstances, we must presume that the evidence is sufficient to support the trial court's ruling. See *Cooper Petroleum Co. v. Coghill*, 198 S.W.2d 616 (Tex.Civ.App.—Galveston 1946, no writ).

Appellants assert that the appellee's motion to reinstate was not verified, as required by rule 165a, and thus, will not support the trial court's ruling.

■ As a general rule, the omission of a verification in a pleading is deemed waived unless the fault is timely challenged in the trial court. *Galaznik v. Galaznik*, 685 S.W.2d 379, 382 (Tex.App.—San Antonio 1984, no writ).

We hold that the appellants waived any error based on the lack of proper verification because the appellants did not object to the appellee's failure to verify the motion for over a year after the case had been reinstated.

Points of error one, two, and three are overruled.

In points of error four, five, and six, the appellants urge that the trial court erred in submitting Special Issue No. 5(b) to the jury because that issue was not raised by the appellee's pleadings and that the court should have disregarded the jury's answer as being immaterial and not conforming to the pleadings.

Issue 5(b) stated:

Do you find from a preponderance of the evidence that Zelma Gillis had good cause for her delay in filing?

A person has "good cause" for delay in filing a claim when they have prosecuted their claim with diligence as an ordinary prudent person would have used under the same or similar circumstances.

Answer: We Do.

■ A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases her claim. Tex.R. Civ.P. 45; see *Reed v. Israel National Oil Co.*, 681 S.W.2d 228, 234 (Tex.App.—Houston [1st Dist.] 1984, no writ). The court will look to the pleader's intention and will uphold the pleading even if some element of a cause of action has not been specifically alleged. *Id.* In the absence of special exceptions, every fact will be supplied that can reasonably be inferred from that which is specifically stated. *Id.*

The appellee's first amended petition alleged:

[T]hat she noticed her employer of the injury she sustained; that she filed her claim for worker's compensation with the Industrial Accident Board within six months after her occupational disease first manifested itself; that the Industrial Accident Board heretofore made a final ruling and award on plaintiff's claim

for worker's compensation on June 11, 1986, that within twenty (20) days of said award, plaintiff filed written notice of appeal with the Board; that within twenty (20) days after service of said appeal, plaintiff filed suit in the Honorable Court. *Alternatively, if notice of said occupational disease was not made in the aforesaid times your plaintiff would show that she had good cause for her delay in giving said notice.* (Emphasis added.) The appellants did not except to the pleading, and we find that it does provide fair and adequate notice of the "good cause" defense.

We also note that appellants did not object to the evidence adduced on the good cause issue, and no objections were made until the court prepared the charge. Indeed, appellants cross-examined the appellee upon that very issue. Thus, we hold that the issue was tried by consent. *See Watts v. St. Mary's Hall, Inc.,* 662 S.W.2d 55, 58 (Tex.App.—San Antonio 1983, writ ref'd. n.r.e.); Tex.R.Civ.P. 65.

Points of error four, five, and six are overruled.

In points of error seven, eight, and nine, the appellants contend that the trial court erred in entering judgment because there was no evidence and insufficient evidence to support it, and that the evidence was against the great weight and preponderance of the evidence to support the jury's answer to issue 5(b).

▮ Good cause is determined by establishing that the claimant prosecuted the claim with the degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances. *Lee v. Houston Fire & Casualty Ins. Co.,* 530 S.W.2d 294, 296 (Tex.1975). Whether the claimant has exercised that degree of diligence required under the ordinarily prudent person test is usually a question of fact to be determined by the jury or trier of fact. *City of San Antonio v. Miranda,* 683 S.W.2d 517, 522 (Tex.App.—San Antonio 1984, no writ). The claimant can usually establish good cause for failure to timely file a claim by showing that the failure to file was based on the belief that the injuries were trivial, and that the claimant had no affirmative medical opinion to the contrary. *Id.*

The record reflects that:

(1) Prior to June 27, 1979, the appellee had been off sick with shortness of breath.

(2) Appellee sustained an injury in the course and scope of her employment on June 27, 1979, while cleaning a patient's room, spraying some cleaning chemical on the desk. Appellee started gasping for air and coughing, and the next day started spitting up blood.

(3) Appellee reported her attack to her supervisor minutes after the incident occurred.

(4) Appellee went to John Sealy Hospital after the attack. She was told to take one month off from work, to stay away from the cleaning chemicals, so that the physician could see how her breathing would progress.

(5) Appellee was given a letter by the Doctor to return to work after a month, but she fell ill again.

(6) In July of 1979, appellee went to Dr. Drake, who performed tests on her.

(7) November of 1979, Dr. Drake gave the appellee a note to give to her employer indicating that she had chemical bronchitis.

(8) Appellee did not realize her condition was going to be a permanent problem and would keep her from working until June of 1980.

(9) Appellee filed her claim with the Industrial Accident Board in August of 1980.

(10) At trial, appellee was still not certain of her diagnosis or how she contracted chemically-induced bronchitis.

▮ This evidence is of sufficient probative force to support the jury's finding of good cause. Until she learned that her condition was permanent, appellee believed that she would get well enough to go back to work. Thus, it was reasonable for the jury to infer that the appellee did not learn how serious her condition was until June of 1980, when Dr. Drake told her that the condition was permanent. We conclude

that there was sufficient evidence to support the jury's findings and answer to issue 5(b).

Points of error seven, eight, and nine are overruled.

In points of error 10, 11, and 12, the appellants assert that the trial court's presumed finding that the good cause for late filing continued until the filing of the claim was supported by no evidence, insufficient evidence, or was against the great weight of the evidence.

■ When a claim has not been presented within the six-month period, the burden is on the claimant to show that good cause for the failure to timely file continued to the date when the claim is actually filed. *See Lee*, 530 S.W.2d at 296.

The issue submitted to the jury asked whether the appellee had good cause for the late filing, but did not specifically ask whether that good cause continued to the date when the claim was filed.

Tex.R.Civ.P. 279, states in pertinent part: [W]here such ground of recovery or of defense consists of more than one issue, and such issues are submitted to and answered by the jury, and one or more of such issues are omitted, without such request, or objection, and there is evidence to support a finding thereon, ... such omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment.

■ The issue submitted is broad enough to raise the implication that good cause existed up until August 1980, when the appellee filed her claim. The record shows she became aware that the injury was permanent in June 1980, and she filed her claim in August 1980. We find the evidence sufficient to support an implied finding that good cause existed up until the date the claim was filed.

Points of error 10, 11, and 12 are overruled.

The judgment is affirmed.