■ WILLIAM ROSE, Respondent, v JOAN GREEN et al., Appellants.—In an action to recover damages for breach of an

employment contract, the defendants appeal from a judgment of the Supreme Court, Westchester County (DiFede, J.H.O.), dated March 3, 1988, which, after a nonjury trial, is in favor of the plaintiff and against them in the principal sum of $198,466.

Ordered that the judgment is reversed on the law, with costs, the complaint is dismissed as against the defendant Joan Green, the awards of damages in favor of the plaintiff and against the defendant Joan Green Designs Associates for (1) breach of contract, (2) royalties, and (3) alleged losses on the sale of the plaintiff's house, are vacated, the principal sum awarded to the plaintiff is reduced from $198,466 to $18,114, with interest from June 17, 1986, at 9% per annum, and the matter is remitted to the Supreme Court, Westchester County, for the entry of an appropriate amended judgment accordingly.

In September 1985 the plaintiff William Rose executed a three-year employment contract with the defendant Joan Green Designs Associates pursuant to which he was to serve as president and was entitled to compensation even if discharged "for cause". Some months after the contract was signed, the plaintiff confronted the defendant Joan Green—with whom he was romantically involved—and demanded, *inter alia,* that he be permitted to purchase a substantial equity interest in the company. When Green did not immediately accede to the plaintiff's demand, the plaintiff responded on June 16, 1986, by submitting to Green a signed, unconditional letter of resignation. Upon receipt of the letter, Green crumpled it, and after further discussion, the parties preliminarily agreed that the plaintiff would be permitted to purchase the equity interest in the business which he had sought prior to the tender of his resignation.

Although later that evening the parties discussed certain additional requests made by the plaintiff with regard to his employment, they ultimately became embroiled in a controversy concerning Green's suggestion that the financially beleaguered business seek financial assistance from Green's father, a suggestion vehemently opposed by the plaintiff. According to Green, the next day—June 17—the plaintiff refused Green's request that he meet with her father, who resided in Ohio, and threatened on more than one occasion to leave the company if Green involved her father in its finances. Green further testified that as the plaintiff left the office that day, he handed Green some business papers, among which was a note in his handwriting stating "Last Official Job". On

June 18, the plaintiff appeared at the airport as Green was about to depart for Ohio, refused to accompany her and advised her that he was "through with the business" if she met with her father. Green nevertheless left for Ohio. Thereafter, the plaintiff returned to the office and obtained from the company's bookkeeper a $41,943 check payable to him as reimbursement of a loan he had made to the business, informing the bookkeeper, as he did so that he had met Green at the airport and informed her that he was "through with the business". On Thursday, June 19, the plaintiff, who had not come in to work, called Green at the office and was informed by her that his resignation was accepted.

Subsequently, by summons and verified complaint dated July 22, 1986, the plaintiff commenced this action against Joan Green and Joan Green Designs Associates alleging, *inter alia,* that the defendants had breached the 1985 employment contract when Green accepted his resignation on June 19. After a trial at which the foregoing testimony was adduced, the Judicial Hearing Officer concluded that the defendants had breached the plaintiff's employment contract. With regard to the resignation letter of June 16—characterized by the Judicial Hearing Officer as a "proposed" resignation, despite its unconditional tenor—the Judicial Hearing Officer determined that it had "not been accepted and had not become effective" and further described the parties' disagreement as a "lovers' quarrel" which had been resolved. The defendants now appeal arguing, *inter alia,* that the court erred as a matter of law in declining to construe the resignation as effective upon submission. We agree.

We reject the Hearing Officer's characterization of the plaintiff's June 16th letter as manifesting an intent merely to "propose" his resignation. Neither the plaintiff's attempt to wrest concessions from Green nor Green's testimony with regard to the plaintiff's statements that he was "through with the business" suggests that the plaintiff's unconditional, signed resignation was feigned, illusory or intended to be construed as tentative or contingent. Indeed, the record reveals that the plaintiff's resignation was freely and voluntarily tendered. Nor do we perceive that the record supports the Hearing Officer's conclusion that the parties had reconciled their "lovers' quarrel", as he described it, to the extent that they bilaterally agreed to perpetuate the plaintiff's employment pursuant to the 1985 contract. The credible evidence adduced at trial is to the contrary and reveals that on several occasions subsequent to June 16th, the plaintiff expressed his

dissatisfaction with Green's response to his demands, withdrew a large sum of money from the business, and, in conformity with his previously submitted resignation, informed Green—orally and in writing—as well as the company's bookkeeper, that he was "through with the business".

Having determined that the letter of resignation was unequivocal in its intendment, we further conclude that the Hearing Officer erred in assessing the significance of its tender. Although the Hearing Officer found that the letter was, in fact, personally submitted to Green, he erroneously construed the concept of "acceptance" as a dispositive criterion in determining that the resignation was not effective. Review of the relevant authorities, however, discloses that in general, an unconditional resignation, which by its terms is to take effect immediately, is effective upon submission without regard to whether it has been accepted *(see, Zeltner v Zeltner Brewing Co.,* 174 NY 247; *Manhattan Co. v Kaldenberg,* 165 NY 1; *Lord v Endicott Johnson Corp.,* 231 App Div 1, 3; *Noble v Euler,* 20 App Div 548; *Levi & Co. v Feldman,* 61 NYS2d 639; *Poland v Glover,* 111 F Supp 675; *cf., Boller v Hunt Co.,* 198 App Div 910, 911; *see also,* 15 NY Jur 2d, Corporations, §§ 863, 864). At bar, the plaintiff's signed, unconditional resignation was clearly intended, by its own terms, to become effective immediately upon tender. Upon tender therefore—and irrespective of acceptance under the circumstances presented— the June 16th resignation became fully effective as a voluntary and complete relinquishment of the plaintiff's rights under the 1985 employment contract. Accordingly, the plaintiff's claims which seek the recovery of damages premised upon the defendants' alleged breach of the 1985 contract must be rejected *(see, e.g., Molinar v Western Elec. Co.,* 525 F2d 521, 529, *cert denied* 424 US 978; *Laiken v American Bank & Trust Co.,* 34 AD2d 514; *Levitz v Robbins Music Corp.,* 6 AD2d 1027; *see also, Lapidus v New York City Ch. of N. Y. State Assn. for Retarded Children,* 118 AD2d 122; 36 NY Jur, Master and Servant, § 54, at 479).

With respect to the remaining issues to be resolved on appeal, we note that the Hearing Officer erred in awarding the plaintiff $5,000 based on royalties. Significantly, the plaintiff conceded at trial that the alleged oral agreement to pay commissions preceded the execution of the 1985 employment contract. Since the subsequent 1985 employment contract makes no reference to any alleged agreement to pay royalties and enumerates the plaintiff's duties and the compensation to which he is entitled, it is our conclusion that the written

contract constituted the complete recitation of the parties' rights and obligations, pursuant to which the plaintiff is not entitled to the recovery of commissions (cf., *Fogelson v Rackfay Constr. Co.,* 300 NY 334; *Potsdam Cent. Schools v Honeywell, Inc.,* 120 AD2d 798, 800; *Lebowitz v Mingus,* 100 AD2d 816, 817; 58 NY Jur 2d, Evidence and Witnesses, §§ 574, 577).

We also find that the Hearing Officer erred in awarding the plaintiff $10,762 in damages relating to the alleged losses sustained upon the sale of his house in the midwest. Initially, it is notable that the 1985 contract contains no provision entitling the plaintiff to reimbursement for such losses. Moreover, even if plaintiff's contentions in respect to an alleged subsequent oral agreement to reimburse are credited, by his own testimony, the defendants were obligated to pay only the difference between the selling price of the house and the "actual purchase price" the plaintiff paid five years earlier. Since the plaintiff's income tax return establishes that the amount for which he sold his home actually exceeded the original purchase price, he has not sustained a reimbursable loss under the purported oral agreement.

The Hearing Officer further erred in adjudicating Green and Joan Green Designs Associates jointly and severally liable. We note in this respect that the plaintiff's complaint specifically alleges that the 1985 contract was entered into by the defendant Joan Green Designs Associates. Moreover, although afforded the opportunity to do so, the plaintiff has failed to establish that Green was a partner or a partner by estoppel in Joan Green Designs Associates or that the partnership was insolvent or otherwise unable to discharge its obligations (see, Partnership Law § 26; *Seligman v Friedlander,* 199 NY 373; *Friedman v Gettner,* 6 AD2d 647, *affd* 7 NY2d 764; *see also, Helmsley v Cohen,* 56 AD2d 519; *Wisnouse v Telsey,* 367 F Supp 855). Upon review of the record and in accord with our determination that the defendants were not in breach of the contract, we determine that the plaintiff is entitled to the sum of $3,010 in salary, representing earned, but unpaid compensation which had accrued—at a rate of $125,000 per annum—prior to his resignation on June 16, 1986. The foregoing amount takes into account the plaintiff's testimony that he was paid $60,600 and $51,800 in 1985 and 1986, respectively, and two $25,000 payments made by the defendants to the plaintiff in October and December of 1985. The Judicial Hearing Officer's finding that the two $25,000 payments constituted salary, not personal loans, is supported by the plaintiff's

testimony to that effect and the absence of any documentation to the contrary.

Although the defendants do not dispute the propriety of the $12,804 bonus award for 1985, we agree with their contention that the Hearing Officer erred in awarding the plaintiff $18,000 in projected bonuses for 1986. The foregoing bonus sum—apparently premised on the plaintiff's own unsubstantiated estimate which was excluded from evidence—is unsupported by the evidence adduced at trial. Moreover, the record reveals that subsequent to the exclusion of the plaintiff's 1986 bonus estimate, the plaintiff withdrew his claim therefor, as reflected both in colloquy with the Judicial Hearing Officer and by the deletion of the 1986 bonus figure from the plaintiff's typewritten schedule of alleged contract damages. Accordingly, the $18,000 award for the 1986 bonus must be set aside.

Finally, we decline to set aside the Hearing Officer's determination that the plaintiff was entitled to an award of $2,300 for moving expenses.

We have reviewed the defendants' remaining contentions and find them to be without merit. Mangano, J. P., Weinstein, Kooper and Balletta, JJ., concur.